## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11' |
| | ) |
| NV BROADCASTING, LLC, et al.,[1] | ) Case No. 09-12473 (KG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) **Related Docket Nos. 6, 47, 104** |

### AMENDED FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, AND (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES

This matter is before the Court on the motion filed by NV Television, LLC and its direct and indirect subsidiaries (collectively, the "NV Debtors") and PBC Television Holdings, LLC, PBC Broadcasting, LLC and their direct and indirect subsidiaries (collectively, the "PBC Debtors," and together with the NV Debtors, NVT Kansas, Inc. and NV Media, LLC, the "Debtors") that are debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Cases") dated July 13, 2009 (the "Motion") requesting entry of an order (the "Order"):[2]

(1)     authorizing and approving, pursuant to sections 105, 361, 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: NV Broadcasting, LLC (7998); NV Media, LLC (6012); NV Television, LLC (4400); NVT Kansas, Inc. (2060); NVT Birmingham, LLC (1537); NVT Birmingham Licensee, LLC (1535); NVT Mason City, LLC (9043); NVT Mason City Licensee, LLC (6216); NVT Portland, LLC (2561); NVT Portland Licensee, LLC (2797); NVT Hawaii, LLC (2999); NVT Hawaii Licensee, LLC (3178); NVT Wichita, LLC (2123); NVT Wichita Licensee, LLC (2241); NVT Topeka, LLC (1839); NVT Topeka Licensee, LLC (1990); NVT Topeka II, LLC (3337); NVT Topeka II Licensee, LLC (5695); NVT Youngstown, LLC (2962); NVT Youngstown Licensee, LLC (5405); NVT Savannah, LLC (8516); NVT Savannah Licensee, LLC (5428); PBC Television Holdings, LLC (7741); PBC Broadcasting, LLC (0533); PBC Broadcasting of Youngstown, LLC (3833); PBC Broadcasting of Youngstown License, LLC (3779); PBC Broadcasting of Savannah, LLC (8216); and PBC Broadcasting of Savannah License, LLC (8214).

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Agreement (as defined below).

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), NV Broadcasting, LLC, NVT Portland, LLC, NVT Hawaii, LLC, NVT Topeka, LLC, NVT Topeka II, LLC, NVT Wichita, LLC, NVT Savannah, LLC, NVT Birmingham, LLC, NVT Mason City, LLC, NVT Youngstown, LLC, NVT Portland Licensee, LLC, NVT Hawaii Licensee, LLC, NVT Topeka Licensee, LLC, NVC Topeka II Licensee, LLC, NVT Wichita Licensee, LLC, NVT Savannah Licensee, LLC, NVT Birmingham Licensee, LLC, NVT Mason City Licensee, LLC, and NVT Youngstown Licensee, LLC (collectively, the "DIP Borrowers") to obtain postpetition financing up to the principal amount of $28 million (the "DIP Facility") pursuant to that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement (as amended or modified from time to time, the "DIP Facility Agreement") from UBS AG, Stamford Branch ("UBS AG"), as issuing bank, administrative agent, collateral agent and a lender (in its capacity as administrative agent and collateral agent, the "DIP Agent"), and the other lenders from time to time parties to the DIP Facility Agreement (collectively, in their capacity as lenders, the "DIP Lenders"), and for NV Television, LLC, NV Media, LLC, NVT Kansas, Inc., PBC Television Holdings, LLC, PBC Broadcasting, LLC, PBC Broadcasting of Youngstown License, LLC, PBC Broadcasting of Youngstown, LLC, PBC Broadcasting of Savannah, LLC, and PBC Broadcasting of Savannah License, LLC (the "DIP Guarantors") to guarantee the payment of the DIP Borrowers' obligations under the DIP Facility and under the Interim Order (as defined below), the Final Order (as defined below) and this Order (collectively, the "Postpetition Indebtedness"), including, without limitation, principal, accrued interest, unpaid fees and expenses, all "Obligations" as defined in the DIP Facility Agreement, and all other obligations and amounts due from time to time under the DIP Facility Documents (as defined below) to (A) fund, among other things, on-going working capital, general corporate, letters of credit and other financing needs of the Debtors, including without limitation certain fees and expenses of professionals

2

payable by the Debtors, (B) pay certain transaction fees, and other costs and expenses of administration of the Cases, (C) provide the First Lien Agent, First Lien Lenders, Second Lien Agent and Second Lien Lenders (each, as defined below, and, collectively, the "Prepetition Secured Parties") Adequate Protection (as defined below), and (D) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Agent and the DIP Lenders under the DIP Facility Agreement and the other DIP Facility Documents;

(2)     authorizing and empowering the Debtors to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(3)     providing, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the financing under the DIP Facility:

a.     have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the Cases or any successor case, which allowed superpriority claims of the DIP Agent and DIP Lenders shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, except for the Carve-Out (as defined below), any Avoidance Actions (as defined in the DIP Facility Agreement) and the proceeds of any Avoidance Actions (the "DIP Facility Superpriority Claims"), and

b.     be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests and liens (the "DIP Facility Liens") in and on all prepetition and postpetition property and assets of the Debtors, wherever located, whether real or personal, whether tangible or

3

intangible, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents and profits thereof (the "Collateral"), subject only to the Carve-Out and the Permitted Prior Liens (as defined below); provided, however, that the Collateral shall not include Avoidance Actions or the proceeds of any Avoidance Actions;

(4)  authorizing the Debtors pursuant to sections 361, 363(c) and (e), and 364(d)(1) of the Bankruptcy Code to use "cash collateral" as defined under section 363 of the Bankruptcy Code (the "Cash Collateral") and to provide Adequate Protection to the Prepetition Secured Parties on account of their claims under the Prepetition Financing Documents (as defined below) for any diminution to the Prepetition Collateral (as defined below) caused by the use of Cash Collateral and the terms of the financing being granted herein; and

(5)  approving the DIP Facility and authorizing the DIP Borrowers to borrow all amounts available under the DIP Facility and use such borrowed amounts to fund the Debtors' working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the DIP Facility Documents, the Interim Order, the Final Order, this Order and any other order of this Court.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the interim hearing held July 15, 2009 (the "Interim Hearing"), the Interim Order, the final hearing held on August 5, 2009 (the "Final Hearing"), and the Final Order having been provided by the Debtors as set forth in paragraph K below, and the Court having held the Interim Hearing and the Final Hearing, and upon consideration of all the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved are hereby overruled; and upon the record made by the parties at the Interim Hearing and the Final Hearing and the Declaration of John A. Heinen in Support of Chapter 11

Petitions and First Day Pleadings, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.     On July 13, 2009 (the "Petition Date"), the Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.     By orders dated July 15, 2009 and August 5, 2009, the Court directed the joint administration of the Cases, and the Cases have been consolidated for procedural purposes only. No request for the appointment of a trustee or examiner has been made in these Cases. No committees have been appointed or designated.

C.     This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     Based upon the Motion, the exhibits thereto, the DIP Facility Documents, and the evidence submitted at the Interim Hearing and the Final Hearing, the Court approved and entered that certain Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Liens and Superpriority Claims, (IV) Granting Adequate Protection to the Prepetition Secured Parties and (V) Scheduling a Final Hearing on the Debtors' Motion to Incur Such Financing on a Permanent Basis on July 15, 2009 [Docket No. 47] (the "Interim Order") and the Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Liens and

Superpriority Claims, (IV) Granting Adequate Protection to the Prepetition Secured Parties [Docket No. 104] (the "Final Order"). The Interim Order and the Final Order, including, without limitation, the findings made therein, are incorporated herein by reference.

E.  Subject to the rights of any non-debtor party in interest as provided in paragraph 6.1 herein, the Debtors acknowledge, agree and stipulate that:

(i)  Pursuant to that certain First Lien Credit Agreement dated as of November 1, 2007 by and among the NV Debtors, UBS AG, Stamford Branch, as collateral agent and as administrative agent (collectively, the "First Lien NV Agent") and the financial institutions from time to time parties thereto (collectively, the "First Lien NV Lenders") (as amended, supplemented, waived and otherwise modified from time to time, the "First Lien NV Credit Agreement" and together with all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "First Lien NV Financing Documents"), the First Lien NV Lenders made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of the NV Debtors from time to time;

(ii)  Pursuant to the First Lien NV Financing Documents, the NV Debtors were, as of the Petition Date, jointly and severally indebted to the First Lien NV Agent and the First Lien NV Lenders on account of the First Lien NV Indebtedness (as defined below) in a total amount of not less than $227,010,983, which is comprised of outstanding principal of $212,480,640, accrued but unpaid interest of $8,229,797, costs of breaking the interest rate swap agreements of $6,300,546, and unpaid fees, costs and expenses in an unliquidated amount. For purposes of this Order, the term "First Lien NV Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the First Lien NV Financing Documents (including, without limitation, all "Obligations" as defined in the First Lien NV

6

Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the First Lien NV Financing Documents), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other obligations outstanding thereunder;

(iii)    Pursuant to that certain Parkin Credit Agreement dated as of November 1, 2007 by and among the PBC Debtors (with the exception of PBC Television Holdings, LLC, which was not an original party, but later joined on December 24, 2007), UBS AG, Stamford Branch, as collateral agent and as administrative agent (collectively, the "First Lien PBC Agent," and together with the First Lien NV Agent, the "First Lien Agent") and the financial institutions from time to time parties thereto (collectively, the "First Lien PBC Lenders," and together with the First Lien NV Lenders, the "First Lien Lenders"; the First Lien Agent and First Lien Lenders are, collectively, the "First Lien Secured Parties") (as amended, supplemented, waived and otherwise modified from time to time, the "First Lien PBC Credit Agreement," and together with all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "First Lien PBC Financing Documents"; the First Lien NV Credit Agreement and the First Lien PBC Credit Agreement are, collectively, the "First Lien Credit Agreement"; the First Lien NV Financing Documents and the First Lien PBC Documents are, collectively, the "First Lien Financing Documents"), the First Lien PBC Lenders made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of the PBC Debtors from time to time;

(iv)     Pursuant to the First Lien PBC Financing Documents, the PBC Debtors were, as of the Petition Date, jointly and severally indebted to the First Lien PBC Agent and the First Lien PBC Lenders on account of the First Lien PBC Indebtedness (as defined below) in a total amount of not less than $47,010,859, which is comprised of outstanding principal of $44,430,000, accrued but unpaid interest of $1,717,846, costs of breaking the interest rate swap agreements of $863,013, and unpaid fees, costs and expenses in an unliquidated amount. For purposes of this Order, the term "First Lien PBC Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the First Lien PBC Financing Documents (including, without limitation, all "Obligations" as defined in the First Lien PBC Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the First Lien PBC Financing Documents), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other obligations outstanding thereunder, and the term "First Lien Indebtedness" shall mean collectively the First Lien NV Indebtedness and the First Lien PBC Indebtedness;

(v)     Pursuant to the First Lien Financing Documents, the NV Debtors and the PBC Debtors granted to and/or for the benefit of the First Lien Agent and First Lien Lenders first priority and continuing pledges, liens and security interests (the "First Lien Lenders' Liens") to secure the First Lien Indebtedness and any guarantees thereof, on and in substantially all of property of the NV Debtors and the PBC Debtors, wherever located, whether real or personal, whether tangible or intangible, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral");

8

(vi)     As of the Petition Date and immediately prior to giving effect to the Interim Order, (a) the First Lien Financing Documents are valid and binding agreements and obligations of the NV Debtors and the PBC Debtors and are enforceable against those debtors in accordance with their terms, (b) the First Lien Lenders' Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens, subject only to the liens permitted under the First Lien Credit Agreement, but only to the extent such permitted liens are (x) valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), (y) not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) senior in priority to the First Lien Lenders' Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements, including the Intercreditor Agreement (such liens, the "Permitted Prior Liens"), and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law except as provided by the Intercreditor Agreement, (c) the First Lien Indebtedness constitutes the legal, valid and binding obligations of the NV Debtors and the PBC Debtors, and the First Lien Indebtedness, and any amounts paid at any time to the First Lien Agent or any First Lien Lender on account thereof or with respect thereto, are not subject to (i) any objection, offset, defense or counterclaim of any kind or nature, or (ii) avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law except as provided by the Intercreditor Agreement, and (d) no claims exist against the First Lien Agent or any First Lien Lender under any contract or tort (including, without limitation, lender liability) theories of recovery or pursuant to section 105 or chapter 5 of the Bankruptcy Code; and

(vii)     The NV Debtors and the PBC Debtors have waived, discharged and released any right they may have to challenge any of the First Lien Indebtedness and the security for those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the First Lien Agent and First Lien Lenders and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees.

F.     Subject to the rights of any non-debtor party in interest as provided in paragraph 6.2 herein, the Debtors acknowledge, agree and stipulate that: pursuant to that certain Second Lien Credit Agreement dated as of November 1, 2007 by and among the NV Debtors, UBS AG, Stamford Branch, as collateral agent and as administrative agent (collectively, and including any successor agent, the "Second Lien Agent," and together with the First Lien Agent, the "Prepetition Agents") and the financial institutions from time to time parties thereto (collectively, the "Second Lien Lenders") (as amended, supplemented, waived and otherwise modified from time to time, the "Second Lien Credit Agreement" and together with all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, including, without limitation, that certain PBC Second Lien Guaranty and Collateral Agreement dated as of November 1, 2007 among the PBC Debtors (with the exception of PBC Television Holdings, LLC, which was not an original party, but later joined on December 24, 2007) and UBS AG Stamford Branch, as collateral agent, the "Second Lien Financing Documents"; the First Lien NV Financing Documents, the First Lien PBC Financing Documents and the Second Lien Financing Documents are, collectively, the "Prepetition Financing Documents"), the Second Lien Lenders made loans and advances to and/or provided other financial accommodations to or for the benefit of the Debtors from time to time. For purposes of this Order, the term "Second Lien Indebtedness" shall mean and include, without

duplication, any and all amounts owing or outstanding under the Second Lien Financing Documents (including, without limitation, all "Obligations" as defined in the Second Lien Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Second Lien Financing Documents), and any and all obligations and liabilities, contingent or otherwise outstanding thereunder, and the term "Prepetition Indebtedness" shall mean the First Lien Indebtedness plus the Second Lien Indebtedness. Pursuant to the Second Lien Financing Documents, the NV Debtors and the PBC Debtors granted to and/or for the benefit of the Second Lien Agent and Second Lien Lenders second priority and continuing pledges, liens and security interests (the "Second Lien Lenders' Liens", and together with the First Lien Lenders' Liens, the "Prepetition Liens") to secure the Second Lien Indebtedness and any guarantees thereof, on and in the Prepetition Collateral.

G.    Subject to the rights of any non-debtor party in interest as provided herein, the Debtors acknowledge, agree and stipulate that: pursuant to that certain Intercreditor Agreement dated as of November 1, 2007 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Intercreditor Agreement"), the First Lien Agent and the Second Lien Agent are parties to an intercreditor arrangement that governs the respective rights, obligations and priorities of the First Lien Lenders and the Second Lien Lenders with respect to their interests in the Prepetition Collateral. Pursuant to the Intercreditor Agreement, the First Lien Lenders' Liens are senior in priority to the Second Lien Lenders' Liens on all Prepetition Collateral.

H.    The Debtors' businesses have a need to obtain the DIP Facility and use Cash Collateral in order to permit, among other things, the orderly continuation of the operation

11

of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations (including letters of credit and other credit support) and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtors and to the success of these Cases. Without such credit and use of Cash Collateral, the Debtors would not be able to operate their businesses and the Debtors' estates would be irreparably harmed.

I.     The Debtors are unable to obtain sufficient financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement, the "DIP Facility Documents"). The Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtors without (i) providing the DIP Agent for the benefit of the DIP Lenders the DIP Facility Superpriority Claims and the DIP Facility Liens as provided herein and in the DIP Facility Documents and (ii) concurrently providing for the Adequate Protection to the Prepetition Secured Parties on the terms and conditions as set forth herein.

J.     The DIP Agent, the DIP Lenders and the Prepetition Secured Parties have indicated a willingness to provide financing to the Debtors and/or permit the use of Cash Collateral by the Debtors (or to otherwise refrain from objecting to such financing or use of Cash Collateral) subject to (i) the entry of the Interim Order, the Final Order and this Order, (ii) the terms and conditions of the DIP Facility Documents, and (iii) findings by the Court that such

12

postpetition financing and use of Cash Collateral is essential to the Debtors' estates, that the terms of such financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Facility Liens, the DIP Facility Superpriority Claims, and the other protections granted pursuant to the Interim Order, the Final Order, this Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of the Interim Order, the Final Order, this Order or any other order, as provided in section 364(e) of the Bankruptcy Code. The DIP Agent, the DIP Lenders and the Prepetition Secured Parties have each acted in good faith in, as applicable, negotiating, consenting to and agreeing to provide the postpetition financing arrangements and/or use of Cash Collateral (or otherwise not opposing such financing or use of Cash Collateral) contemplated by the Interim Order, the Final Order, this Order and the other DIP Facility Documents and the reliance of each of the DIP Agent, DIP Lenders and Prepetition Secured Parties on the assurances referred to above is in good faith.

K. Notice of the Motion, the Interim Order, the Final Hearing, and the Final Order has been provided to (i) the thirty (30) largest creditors listed in the Debtors' consolidated list of creditors, (ii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (iii) counsel to the official committee of unsecured creditors (the "Committee"), if appointed, (iv) counsel to the DIP Agent and the First Lien Agent, (v) counsel to the Second Lien Agent, (vi) the Internal Revenue Service, (vii) the Federal Communications Commission, (viii) the Office of the United States Attorney for the District of Delaware, (ix) each of the Debtors' cash management banks, (x) all known parties asserting a lien against the Collateral, and (xi) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules, (collectively, the "Notice Parties"). The requisite notice of the Motion and the relief requested thereby has been provided in accordance

with Bankruptcy Rule 4001 and Local Bankruptcy Rule 9013-1(m), which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Order.

L.    The Debtors have requested entry of the Final Order and this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of the Final Order and this Order, which amends the Final Order, the Debtors' businesses, properties and estates will be irreparably harmed.

M.    The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, including letters of credit and credit support, and use of Cash Collateral is in the best interests of the Debtors and their respective creditors and estates. The postpetition financing and use of Cash Collateral authorized hereunder is vital to avoid irreparable harm to the Debtors' businesses, properties and estates and to allow the orderly continuation of the Debtors' businesses.

N.    Based upon the record presented by the Debtors to this Court:  (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral has been negotiated in good faith and at arm's length among the Debtors and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties, and any loans, credit, letters of credit, credit support, use of Cash Collateral or other financial accommodations authorized by this Order, the Final Order or the Interim Order shall be

deemed to have been extended, issued, made, or consented to, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

O. None of the Prepetition Secured Parties have opposed the terms and conditions of this Order, including the priming under section 364(d) of the Bankruptcy Code as provided for herein. The consent of the Prepetition Secured Parties granted herein is expressly limited to (i) the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Order, the Final Order and the Interim Order, and (ii) the postpetition financing being provided by the DIP Agent and DIP Lenders as contemplated by this Order, the Final Order, the Interim Order, and the DIP Facility Documents. Nothing in this Order, the Final Order or the Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of any Prepetition Secured Party are or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Prepetition Liens.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. <u>Disposition</u>. The Motion is granted as set forth in this Order. Any objections that have not previously been withdrawn are hereby overruled. This Order shall immediately become effective upon its entry.

2. <u>Authorization to Borrow</u>. Upon the Debtors' use of Cash Collateral up to the amount of the Petition Date Cash (as defined below) in accordance with paragraph 8 hereof, and provided that the Debtors are not in default under the terms of the Interim Order, the Final Order, this Order or the DIP Facility Documents, the DIP Borrowers are authorized to borrow under the DIP Facility from the DIP Lenders all amounts available under the DIP Facility Agreement on and subject to the terms and conditions of the DIP Facility Documents, the Final Order and this Order, and to use amounts borrowed under the DIP Facility to fund the Debtors'

15

working capital and other general corporate needs, and any other amounts required or allowed to be paid, in accordance with the terms of the DIP Facility Documents, the Final Order, this Order and any other orders of this Court. The DIP Facility Documents shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable against each of the Debtors in accordance with their terms.

3. <u>DIP Facility Superpriority Claims</u>. For all of the Postpetition Indebtedness and any other of the Debtors' obligations arising under the DIP Facility Documents, the DIP Lenders and DIP Agent are each granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out, the allowed DIP Facility Superpriority Claims, which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Debtors whether now existing or hereafter acquired; provided, <u>however</u>, that the DIP Facility Superpriority Claims shall not be payable from any Avoidance Actions or the proceeds of any Avoidance Actions. The DIP Facility Superpriority Claims shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance other than as specifically provided for herein, for all purposes in the Cases and any successor case.

4. <u>DIP Facility Liens</u>. As security for the repayment of the Postpetition Indebtedness, pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, the DIP Agent, on behalf of itself and the DIP Lenders, is hereby granted (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, account control agreements, financing statements, or otherwise) the DIP Facility Liens. The DIP Facility Liens are valid, binding, enforceable and fully perfected as of the date of entry of the Interim Order, not subject to subordination, impairment or avoidance, for all purposes in the Cases and any successor case. The DIP Facility Liens granted herein shall prime and be senior in all

respects to the Prepetition Liens and the Replacement Liens (as defined below) pursuant to section 364(d) of the Bankruptcy Code. Upon entry of the Interim Order, all possessory collateral held by any Prepetition Agents was deemed to have been transferred to the DIP Agent and all lockbox, blocked account and similar control agreements were deemed assigned to the DIP Agent, on behalf of the DIP Lenders.

        5.    <u>Carve-Out</u>. Subject to the terms and conditions contained in this paragraph, the DIP Facility Liens, DIP Facility Superpriority Claims, and the Adequate Protection shall be subject to the following (but only to the extent that there are not sufficient, unencumbered funds in the Debtors' estates to pay such amounts at the time payment is required to be made): (a) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (b) allowed professional fees and expenses of the Debtors and the Committee (if appointed) (but excluding any transaction, restructuring, completion, success or similar fees) (collectively, the "<u>Professional Fees</u>") incurred to the extent consistent with the 13-Week Budget (as defined in the DIP Facility Agreement, the "<u>Budget</u>"), but unpaid, prior to delivery of a notice of an Event of Default (as defined below) (the "<u>Carve-Out Notice</u>"); (c) Professional Fees incurred subsequent to delivery of the Carve-Out Notice to the extent consistent with the Budget in an aggregate amount not to exceed $1,000,000 (items (a) through (c), collectively, the "<u>Carve-Out</u>"). The Carve-Out shall exist at all times, but only be triggered and payable upon (i) the occurrence of any event of default under any DIP Facility Document (each, an "<u>Event of Default</u>") and delivery of a Carve-Out Notice by the DIP Agent to the Debtors, counsel to the Debtors, and counsel to the Committee (if appointed) or (ii) the Final Maturity Date (as defined in the DIP Facility Agreement). Notwithstanding anything herein to the contrary, no Prepetition Collateral, Collateral, Cash Collateral, amounts borrowed under the DIP Facility, proceeds of any of the foregoing, or any portion of the Carve-Out shall include,

apply to, or be available for any fees or expenses incurred by any party, including the Debtors or the Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Agent or any of the DIP Lenders, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim, or offset to the Postpetition Indebtedness, the DIP Facility Superpriority Claims, or the DIP Facility Liens, (ii) asserting (A) any claims or causes of action, including, without limitation, claims or actions to hinder or delay the assertion or enforcement of the DIP Facility Liens or Replacement Liens, or realization on the Collateral, in accordance with the DIP Facility Documents, the Interim Order, the Final Order or this Order by the DIP Agent, any DIP Lender, or any of the First Lien Secured Parties, or (B) any Avoidance Actions against the DIP Agent, any DIP Lender, or any of the First Lien Secured Parties, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the First Lien Secured Parties, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the First Lien Indebtedness, any First Lien Financing Document, or the First Lien Adequate Protection granted herein; provided, however, that the Committee (if appointed) shall be authorized to use up to $50,000 to investigate the liens, claims and interests of the Prepetition Secured Parties. The foregoing shall not be construed as consent to the allowance of any Professional Fees and shall not affect the right of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of any Professional Fees. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (x) reduce any Debtor's obligations owed to the DIP Agent or any of the DIP Lenders or the Prepetition Secured Parties or (y) subordinate, modify, alter or otherwise affect any of the

liens and security interests of such parties on and in the Collateral or Prepetition Collateral (or their respective claims against the Debtors).

      6.1   <u>First Lien Investigation Rights</u>. Notwithstanding anything herein to the contrary, including the Debtors' stipulations and releases herein solely as they relate to the First Lien Agent and First Lien Lenders, (a) the Committee, if appointed, shall have until the later of (i) 60 days from the date of appointment of the Committee and (ii) 75 days from the entry of the Interim Order, and (b) any other non-debtor party in interest (including, without limitation, any receiver, administrator or trustee appointed or elected in any of the Cases or any successor case or in any jurisdiction) shall have until 75 days from the entry of the Interim Order (the applicable date, the "<u>Investigation Termination Date</u>") to investigate the validity, perfection, and enforceability of the First Lien Lenders' Liens and the amount and allowability of the First Lien Indebtedness, or to assert any other claims or causes of action against the First Lien Agent or any of the First Lien Lenders. If the Committee (if appointed), or any non-debtor party in interest, determines that there may be a challenge by the Investigation Termination Date, upon five (5) days' written notice to the Debtors and the applicable First Lien Agent, such Committee (if appointed) or other non-debtor party in interest shall have only until the Investigation Termination Date to commence an adversary proceeding or contested matter (each, a "<u>Challenge</u>"), as required by the applicable Bankruptcy Rules, on behalf of the Debtors' estates setting forth the basis of any such Challenge. In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of the Prepetition Secured Parties under the Interim Order, the Final Order, this Order, or the Prepetition Financing Documents pending a ruling on such Challenge. If no Challenge is filed on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the First Lien Agent), then the agreements, acknowledgements, releases and stipulations contained in

19

paragraph E of this Order shall be irrevocably binding on the estates, the Committee (if appointed) and all other parties in interest (including, without limitation, any receiver, administrator, or trustee appointed in any of the Cases or any successor case or in any jurisdiction) without further action by any party or this Court, and the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Cases or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge with respect to the First Lien Agent or any First Lien Lender. If a Challenge is timely filed on or before the Investigation Termination Date, all claims and actions against the First Lien Agent or any First Lien Lenders not expressly asserted in such Challenge shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released and waived. Nothing in this Order, the Final Order or the Interim Order (a) confers standing on any party to file or prosecute such Challenge other than as to the Committee (if appointed), which shall be deemed to have standing or (b) precludes the First Lien Agent or any First Lien Lender from seeking allowance of all or any portion of the First Lien Indebtedness prior to the occurrence of the Investigation Termination Date.

6.2     Second Lien Investigation Rights.  Notwithstanding anything herein to the contrary, including the Debtors' stipulations and releases herein solely as they relate to the Second Lien Agent and Second Lien Lenders, (a) the Committee, if appointed, shall have until the later of (i) 60 days from the date of appointment of the Committee and (ii) 75 days from the entry of the Interim Order, and (b) any other non-debtor party in interest (including, without limitation, any receiver, administrator or trustee appointed or elected in any of the Cases or any successor case or in any jurisdiction) shall have until 75 days from the entry of the Interim Order (the applicable date (the "Second Lien Investigation Termination Date") to investigate the

validity, perfection, and enforceability of the Second Lien Lenders' Liens and the amount and allowability of the Second Lien Indebtedness, or to assert any other claims or causes of action against the Second Lien Agent or any of the Second Lien Lenders. If the Committee (if appointed), or any non-debtor party in interest, determines that there may be a challenge by the Second Lien Investigation Termination Date, upon five (5) days' written notice to the Debtors and the applicable Second Lien Agent, such Committee (if appointed) or other non-debtor party in interest shall have only until the Second Lien Investigation Termination Date to commence a Challenge, as required by the applicable Bankruptcy Rules, on behalf of the Debtors' estates setting forth the basis of any such Challenge. In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of the Prepetition Secured Parties under the Interim Order, the Final Order, this Order, or the Prepetition Financing Documents pending a ruling on such Challenge. If no Challenge is filed on or before the Second Lien Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the Second Lien Agent), then the agreements, acknowledgements, releases and stipulations contained in paragraph F of this Order shall be irrevocably binding on the estates, the Committee (if appointed) and all other parties in interest (including, without limitation, any receiver, administrator, or trustee appointed in any of the Cases or any successor case or in any jurisdiction) without further action by any party or this Court, and the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Cases or any successor case or in any jurisdiction) shall thereafter be forever barred from bringing any Challenge with respect to the Second Lien Agent or any Second Lien Lender. If a Challenge is timely filed on or before the Second Lien Investigation Termination Date, all claims and actions against the Second Lien Agent or any Second Lien Lenders not expressly asserted in such Challenge shall be deemed, immediately and without further notice, motion or

application to, order of, or hearing before, this Court, to have been forever relinquished, discharged, released and waived. Nothing in this Order, the Final Order or the Interim Order (a) confers standing on any party to file or prosecute such Challenge other than as to the Committee (if appointed), which shall be deemed to have standing or (b) precludes the Second Lien Agent or any Second Lien Lender from seeking allowance of all or any portion of the Second Lien Indebtedness prior to the occurrence of the Second Lien Investigation Termination Date.

7.     Section 506(c) and 552(b) Waivers. With the exception of the Carve-Out and except as otherwise permitted by the DIP Facility, none of the Collateral, the Prepetition Collateral, the DIP Agent, any DIP Lender, or any of the First Lien Secured Parties, nor any of their claims, shall be subject to any costs or expenses of administration that have been or may be incurred at any time, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, by the Debtors or any other party in interest without the prior written consent of the DIP Agent and the First Lien Agent and no such consent shall be implied from any action, inaction, or acquiescence by any party, including, but not limited to, funding of the Debtors' ongoing operations by the DIP Agent and DIP Lenders. The "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived. Neither the DIP Agent nor any of the DIP Lenders or Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or Prepetition Collateral.

8.     Authorization To Use Cash Collateral. To the extent the Debtors have cash on hand as of the Petition Date (the "Petition Date Cash"), the Debtors are authorized to use Cash Collateral up to the amount of the Petition Date Cash to fund the Debtors' working capital and other general corporate needs in accordance with the terms of the Interim Order, the Final

22

Order, this Order, the DIP Facility Documents and the Budget. Upon the Debtors' use of Cash Collateral up to the amount of the Petition Date Cash, the Debtors are authorized to use amounts borrowed under the DIP Facility and Cash Collateral to fund the Debtors' working capital and other general corporate needs in accordance with the terms of this Order, the Final Order, the Interim Order, the DIP Facility Documents and the Budget.

9. <u>First Lien Agent and First Lien Lenders Adequate Protection</u>. In consideration for the use of Cash Collateral and the priming of the First Lien Lenders' Liens (solely upon the terms and conditions of this Order, the Final Order and the Interim Order), the First Lien Agent and First Lien Lenders shall receive the following (collectively the "<u>First Lien Adequate Protection</u>"):

(a) To the extent there is a diminution in the First Lien Agent's interests in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, the imposition of the automatic stay, the priming of the First Lien Lenders' Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the First Lien Agent, on behalf of the First Lien Lenders, is granted replacement liens in the Collateral, subject to the Carve-Out (the "<u>First Lien Replacement Liens</u>"), which liens are valid, binding, enforceable and fully perfected as of the date hereof and shall be subordinate only to the DIP Liens, Permitted Prior Liens, and First Lien Lenders' Liens;

(b) Subject to the Carve-Out, an allowed administrative claim (the "<u>First Lien Administrative Claim</u>") against the Debtors' estates under section 507(b) of the Bankruptcy Code to the extent that the First Lien Replacement Liens do not adequately protect the diminution in the value of the First Lien Agent's interests in the Prepetition Collateral, which

23

First Lien Administrative Claim, if any, shall be junior and subordinate only to the DIP Facility Superpriority Claims;

(c)     To the extent provided in the First Lien Credit Agreement, within ten (10) business days following the Debtors' receipt of a written summary invoice (with a copy delivered to the U.S. Trustee and counsel to the Committee (if appointed)), payments of the First Lien Agent's reasonable fees and expenses for legal counsel, financial advisors, auditors and other professionals for services rendered prepetition or postpetition on behalf of the First Lien Agent or its counsel and payments of each of the First Lien Lenders' reasonable fees and expenses for legal counsel, auditors, financial advisors and other professionals for services rendered prepetition or postpetition; provided, that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or to the United States Trustee Guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, further, that if an objection to a professional's invoice is made within ten (10) business days following the Debtors' receipt of such invoice, the Debtors shall only be required to pay the undisputed amount and the Court shall have jurisdiction to determine any dispute concerning such invoice; provided, further, that such payments shall be provisional in nature, and if and to the extent that any payment(s) is challenged by a party in interest under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, such payment(s) may be recharacterized as a payment of principal on the indebtedness under the First Lien Credit Agreement; and

(d)     The right to petition this Court for any such additional protection they may reasonably require with respect to the First Lien Indebtedness or otherwise, including, without limitation, the First Lien Agent's and First Lien Lenders' right to request additional

adequate protection of their interests in the Prepetition Collateral or the Cash Collateral or relief from or modification of the automatic stay under section 362 of the Bankruptcy Code.

10.    <u>Second Lien Agent and Second Lien Lenders Adequate Protection</u>.    In consideration for the use of Cash Collateral and the priming of the Second Lien Lenders' Liens (solely upon the terms and conditions of this Order, the Final Order and the Interim Order), the Second Lien Agent and Second Lien Lenders shall receive the following (collectively the "<u>Second Lien Adequate Protection</u>", and together with the First Lien Adequate Protection, the "<u>Adequate Protection</u>"):

(a)    To the extent there is a diminution in the Second Lien Agent's interests in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, the imposition of the automatic stay, the priming of the Second Lien Lenders' Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the Second Lien Agent, on behalf of the Second Lien Lenders, is granted replacement liens in the Collateral, subject to the Carve-Out (the "<u>Second Lien Replacement Liens</u>", and together with the First Lien Replacement Liens, the "<u>Replacement Liens</u>"), which liens are valid, binding, enforceable and fully perfected as of the date hereof and shall be subordinate only to the DIP Liens, Permitted Prior Liens, First Lien Lenders' Liens and First Lien Replacement Liens; and

(b)    To the extent provided in the Second Lien Credit Agreement, within ten (10) business days following the Debtors' receipt of a written summary invoice (with a copy delivered to the U.S. Trustee and counsel to the Committee (if appointed)), payments of the Second Lien Agent's reasonable fees and expenses for legal counsel, financial advisors, auditors and other professionals for services rendered prepetition or postpetition on behalf of the Second Lien Agent or its counsel and payments of each of the Second Lien Lenders' reasonable

25

fees and expenses for legal counsel, auditors, financial advisors and other professionals for services rendered prepetition or postpetition; provided, that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or to the United States Trustee Guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, further, that if an objection to a professional's invoice is made within ten (10) business days following the Debtors' receipt of such invoice, the Debtors shall only be required to pay the undisputed amount and the Court shall have jurisdiction to determine any dispute concerning such invoice; provided, further, that such payments shall be provisional in nature, and if and to the extent that any payment(s) is challenged by a party in interest under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, such payment(s) may be recharacterized as a payment of principal on the indebtedness under the Second Lien Credit Agreement.

11.    Fees and Expenses of the DIP Agent and the DIP Lenders. The Debtors shall promptly, following receipt of a written summary invoice (with a copy delivered to the U.S. Trustee and counsel to the Committee (if appointed)), reimburse the DIP Agent and the DIP Lenders for their reasonable costs, fees (including, without limitation, reasonable attorneys' and financial advisors' fees and expenses), charges, and expenses incurred in connection with the Cases or under the DIP Facility, whether incurred prepetition or postpetition, within ten (10) business days (if no written objection is received within such ten (10) business-day period) after such professional has delivered the summary invoice. None of such costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the United States Trustee Guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, that to the extent the Debtors fail to reimburse the DIP Agent and/or the DIP Lenders for any such fees and

expenses, the applicable professionals shall be permitted to apply any amounts held in escrow or retainer (whether obtained prior to, or, or after, the Petition Date) against such unpaid fees and expenses without the need to file any application with the Court; provided, further, that the Court shall have jurisdiction to determine any dispute concerning such invoices; provided, further, that if an objection to a professional's invoice is timely received, the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

12.     Restrictions on the Debtors.  Other than the Carve-Out and the Permitted Prior Liens, no claim or lien having a priority superior or *pari passu* with those granted by this Order or the Final Order to the DIP Agent, the DIP Lenders or any of the First Lien Secured Parties shall be granted by any Debtor, while any portion of the Postpetition Indebtedness (or refinancing thereof) or the Prepetition Indebtedness, or any commitment under the DIP Facility, remains outstanding, without the written consent of the DIP Agent and the First Lien Agent. Except as expressly permitted by the DIP Facility Documents, the Interim Order, the Final Order and this Order, the Debtors will not, at any time during the Cases, grant mortgages, security interests, or liens in the Collateral or any portion thereof pursuant to section 364(d) of the Bankruptcy Code or otherwise.

13.     Additional Perfection Measures.  Neither the DIP Agent nor any of the DIP Lenders or the Prepetition Secured Parties shall be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Facility Documents, the Interim Order, the Final Order and this Order (including, without limitation, the taking possession of any of the Collateral, or the taking of any action to have security interests or liens noted on certificates of title or similar documents).

Notwithstanding the foregoing, the DIP Agent, any DIP Lender and the First Lien Agent may, in their sole discretion, file the Final Order, this Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of such liens, security interests, and mortgages, without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, and all such documents shall be deemed to have been filed or recorded on the Petition Date, with the priorities set forth herein.

14. Access to Collateral – No Landlord's Liens. Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, for the ratable benefit of the DIP Lenders, contained in this Order, the Interim Order, the Final Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Documents, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Agent may, subject to any separate agreement by and between such landlord and the DIP Agent (the "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and, subject to the Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from such landlord; provided, that, subject to the Separate Agreement, the DIP Agent shall only pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph.

15. Automatic Stay. Subject only to the provisions of the DIP Facility Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit

the DIP Agent and DIP Lenders, upon the occurrence and during the continuance of any Event of Default, to exercise all rights and remedies provided for in the DIP Facility Documents; provided, however, that prior to the exercise of any enforcement or liquidation remedies against the Collateral, the party exercising such rights or remedies shall be required to give three (3) business days' prior written notice to the Debtors, counsel to the Debtors, counsel to the Committee (if appointed), counsel to the Prepetition Agents and the U.S. Trustee; provided, however, that such notice shall not be required prior to the exercise of any right or remedy to (i) freeze monies or balances in the Debtors' accounts, (ii) set off monies or balances of the Debtors in accounts maintained by the DIP Agent or any DIP Lender, (iii) charge default rates of interest, (iv) terminate commitments and cease funding under the DIP Facility Agreement, or (v) revoke consent to the use of Cash Collateral. Notwithstanding the occurrence of an Event of Default or termination of the commitments under the DIP Facility Agreement or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the DIP Agent and DIP Lenders under the DIP Facility Documents, the Interim Order, the Final Order and this Order shall survive the Final Maturity Date (as defined in the DIP Facility Agreement). The Debtors and/or the Committee shall have the initial burden of proof at any hearing on any request by the Debtors and/or the Committee to re-impose or continue the automatic stay with respect to the DIP Agent or DIP Lenders; provided, however, that the only issue to be determined at such hearing shall be whether an Event of Default has occurred and is continuing, and if an Event of Default is determined to have occurred and be continuing, the automatic stay will not be re-imposed or continue with respect to the DIP Facility Agents and the DIP Facility Lenders. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay with respect to the DIP Agent or DIP Lenders.

16.     Binding Effect.  The provisions of this Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Debtors, the Committee (if appointed), and their respective successors and assigns, including any trustee hereafter appointed for the estate of any of the Debtors, whether in these Cases or any successor case, including the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Order.

17.     Survival.  The provisions of this Order, the Final Order and the Interim Order and any actions taken pursuant hereto or thereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code in any of the Cases (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (b) approving any sale under section 363 of the Bankruptcy Code, (c) converting any of the Cases to a chapter 7 case unless permitted under the DIP Facility Documents, or (d) dismissing any of the Cases unless permitted under the DIP Facility Documents; and, notwithstanding the entry of any such order, the terms and provisions of this Order, the Final Order and the Interim Order shall continue in full force and effect, and the DIP Facility Superpriority Claims, DIP Facility Liens, and Adequate Protection granted pursuant to this Order, the Final Order, the Interim Order and/or the DIP Facility Documents shall continue in full force and effect and shall maintain their priority as provided by this Order, the Final Order, the Interim Order and the DIP Facility Documents to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash.

18.     After-Acquired Property.  Except as otherwise provided in this Order, the Final Order and the Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including, without limitation, all

Collateral pledged or otherwise granted to the DIP Agent, on behalf of the DIP Lenders, pursuant to the DIP Facility Documents, the Interim Order, the Final Order and this Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

19. Access to the Debtors. In accordance with the provisions of access in the DIP Facility Documents, the Debtors shall permit representatives, agents, and/or employees of the DIP Agent and the DIP Lenders to have reasonable access to the Debtors' premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as is reasonably requested.

20. Authorization to Act. Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Order, the Interim Order, the Final Order and the DIP Facility Documents, which may be reasonably required or necessary for the Debtors' full and timely performance under the DIP Facility Documents, the Interim Order, the Final Order and this Order, including, without limitation:

(a) the execution of the DIP Facility Documents;

(b) the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Debtors, the DIP Agent, and the DIP Lenders may agree in accordance with the terms of

the DIP Facility Documents; provided, however, that notice of any material modification or amendment shall be provided to counsel for the Committee (if appointed), counsel for the Prepetition Agents and the U.S. Trustee, each of which will have five (5) days from the date of delivery of such notice within which to object in writing; provided, further, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court; and

(c)     the non-refundable payments to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Facility Agreement, and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents.

21.     Insurance Policies. Upon entry of the Interim Order, the DIP Agent and DIP Lenders were, and were deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral. Any insurance proceeds or other receipts from any source that relate to the Collateral and are paid to any Prepetition Secured Party shall be immediately delivered to the Debtors and subject to the DIP Facility Liens and the terms of the DIP Facility Documents.

22.     Subsequent Reversal. If any or all of the provisions of this Order, the Final Order, the Interim Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court: (a) such modification, vacatur, amendment, or stay shall not affect (i) the validity of any obligation of any Debtor to the DIP Agent, DIP Lenders or Prepetition Secured Parties that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay

(the "Effective Date"), or (ii) the validity, enforceability or priority of the DIP Facility Superpriority Claims, DIP Facility Liens, Adequate Protection or other grant authorized or created by this Order, the Final Order, the Interim Order and the DIP Facility Documents; (b) the Postpetition Indebtedness and Adequate Protection pursuant to this Order, the Final Order, the Interim Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the provisions of this Order in effect immediately prior to the Effective Date and the DIP Facility Documents; and (c) the use of Cash Collateral and the validity of any financing provided or security interest granted pursuant to this Order, the Final Order, the Interim Order and the DIP Facility Documents are and shall be protected by section 364(e) of the Bankruptcy Code.

23. <u>Effect of Dismissal of Cases</u>. If the Cases are dismissed, converted or substantively consolidated, then neither the entry of this Order, the Final Order or the Interim Order nor the dismissal, conversion or substantive consolidation of these Cases shall affect the rights of the DIP Agent, DIP Lenders and Prepetition Secured Parties (to the extent of Adequate Protection provided hereunder) under their respective documents, this Order, the Final Order or the Interim Order, and all of the respective rights and remedies thereunder of the DIP Agent, DIP Lenders and Prepetition Secured Parties (to the extent of Adequate Protection provided hereunder) shall remain in full force and effect as if the Cases had not been dismissed, converted, or substantively consolidated. If an order dismissing any of the Cases is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Facility Liens and DIP Facility Superpriority Claims granted to and conferred upon the DIP Agent and DIP Lenders and the protections afforded to the DIP Agent and/or the DIP Lenders pursuant to this Order, the Final Order, the Interim Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their priorities as provided

33

in this Order, the Final Order and the Interim Order until all Postpetition Indebtedness shall have been paid and satisfied in full in cash and, with respect to outstanding undrawn letters of credit, cash collateralized in accordance with the provisions of the DIP Facility Agreement (and that such DIP Facility Liens, DIP Facility Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (b) the Adequate Protection granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Order and the Intercreditor Agreement until such Adequate Protection has been satisfied, (c) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Prepetition Liens, DIP Facility Superpriority Claims, and Adequate Protection, and (d) any hearing on a motion to dismiss any of the Cases shall require at least twenty (20) days prior notice to the DIP Agent and Prepetition Agents.

24.     Findings of Fact and Conclusions of Law. This Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof.

25.     Controlling Effect of Order. To the extent any provision of this Order conflicts with any provision of the Motion, any documents executed or delivered prior to the Petition Date, or any DIP Facility Documents, the provisions of this Order shall control.

Dated: August **28**, 2009
       Wilmington, Delaware

The Honorable Kevin Gross
United States Bankruptcy Judge

34